IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                                                       Crim. No. 20-1486 KG

STETSON SHANE BARNES,

    Defendant.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court upon Defendant Stetson Shane Barnes' "Motion to Sever Defendant Stetson Shane Barnes' Trial from Other Co-Defendants' Trials and Memorandum in Support Thereof" (Motion to Sever), filed February 11, 2021. (Doc. 85). The Motion to Sever is now fully and timely briefed. *See* (Docs. 88, 102, 103, 107, and 108). Having considered the briefing, the Superseding Indictment (Doc. 93), the United States' submissions (Docs. 107 and 108), the controlling law, and for the following reasons, the Court denies the Motion to Sever without prejudice.

*I. The Superseding Indictment*

This case involves a carjacking resulting in the death of J.S. Count 1 charges conspiracy to commit carjacking against all Defendants: Stetson Shane Barnes, Donald Alfred Busch, Jehra Lynn Hedgecock, and Tyson Lee Terrell. Count 1 alleges that from May 27, 2019, to May 28, 2019, Defendants "were at a mobile home on a property shared by" Barnes and Terrell. (Doc. 93) at 2. While at the mobile home, Busch allegedly "solicited the assistance of" Barnes, Hedgecock, and Terrell to go "to J.S.'s home to physically assault J.S. and take one of J.S.'s

motorcycles." *Id.* According to Count 1, "Hedgecock agreed to use her truck to transport the motorcycle that the group intended to take from J.S." *Id.*

Count 1 further alleges that on May 28, 2019, Hedgecock drove Barnes, Busch, and Terrell "to J.S.'s home where they intended to physically assault J.S. and take one of J.S.'s motorcycles." *Id.* Hedgecock purportedly "knocked on the front door of J.S.'s home in an attempt to draw J.S. out of his home." *Id.* at 3. Meanwhile, Busch allegedly found the motorcycle "he intended to take under J.S.'s carport and began the process of pushing the motorcycle off of J.S.'s property." *Id.*

Count 1 alleges that when J.S. exited his home Barnes, Hedgecock, and Busch each pointed a firearm at J.S. *Id.* Count 1 also alleges that, at the same, Terrell "unsuccessfully attempted to jumpstart a different motorcycle while standing under J.S.'s carport." *Id.* According to Count 1, after Barnes, Hedgecock, and Busch pointed their firearms at J.S., "Hedgecock got into the driver's seat of her truck;" "Terrell got into the front passenger seat of" the truck; "Barnes got into the back seat of" the truck; and "Busch pushed the stolen motorcycle off of J.S.'s property." *Id.*

In addition, Count 1 alleges that, as Hedgecock drove away from J.S.'s home, "Barnes fired multiple rounds of ammunition from the back seat of … Hedgecock's truck into J.S.'s home." *Id.* "One of those rounds of ammunition" allegedly "struck and killed J.S." *Id.* Hedgecock then purportedly "stopped her truck on the side of the road" so Barnes and Terrell could help Busch load the stolen motorcycle onto the bed of Hedgecock's truck. *Id.* at 4. Finally, Count 1 alleges that Hedgecock drove Barnes, Busch, and Terrell back to Barnes' mobile home. *Id.*

Count 2 charges all Defendants with carjacking resulting in a death as well as aiding and abetting.  Counts 3 and 4 charge Hedgecock and Busch, respectively, with brandishing a firearm in relation to a crime of violence.  Count 5 charges Barnes with brandishing a firearm and discharging a firearm in relation to a crime of violence, which caused a death.  In Counts 6 and 7, Barnes and Busch, respectively, are charged with being a felon in possession of a firearm and ammunition.

II. *The Motion to Sever*

Barnes moves under Fed. R. Crim. P. 14 and the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution to sever his trial from the trial of the other co-Defendants.[1]  Barnes maintains that although he has not given any statements to the police, his three co-Defendants have.  Barnes also maintains that a question exists as to whether Defendants intended to steal a motorcycle belonging to J.S. or whether they intended to retrieve a motorcycle belonging to Busch.  Barnes further maintains that evidence suggests that J.S. fired a gun first and nearly hit Barnes and another co-Defendant before "defendants return[ed] fire."  *See* (Doc. 85) at 2.

Barnes argues first that this case presents a *Bruton* issue in that Barnes may be deprived of his Sixth Amendment right to confrontation and his Fourteenth Amendment due process right to cross-examination if his co-Defendants' incriminating police statements are introduced at a joint trial and co-Defendants choose not to testify at the joint trial.  *See Bruton v. United States*, 391 U.S. 123 (1968).  Next, Barnes argues that the complexity of the case supports severance.  Finally, Barnes argues that co-Defendants have defenses which are antagonistic to his defense

---

[1] The Court notes it granted Barnes' request that the Court order the United States to "deliver to the Court for in camera inspection any defendant's statement that the government intends to use as evidence." (Doc. 85) at 23.  In fact, the United States has already filed those statements with the Court.  *See* (Docs. 103, 107, and 108).

3

and that a joint trial will unduly prejudice him. The United States opposes the Motion to Sever in its entirety.[2] Notably, Barnes did not file a reply to the United States' opposition nor did he object to the United States' subsequent Court-ordered submissions. *See* (Doc. 108).

## III. Discussion

Federal Rule of Criminal Procedure 8(b) sets forth the parameters under which an indictment may charge two or more defendants. Pursuant to Rule 8(b), an indictment may charge two or more defendants "if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Furthermore, Rule 8(b) directs that "[a]ll defendants need not be charged in each count" to be charged together in one indictment.

Federal Rule of Criminal Procedure 14(a), however, circumscribes the prosecutor's broad authority under Rule 8(b) to join multiple defendants in a single indictment, explaining that "[i]f the joinder of … defendants in … a consolidation for trial appears to prejudice a defendant …, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Both the Advisory Committee Notes following Rule 14 and the Tenth Circuit state that "the question whether to grant a severance is generally left within the discretion of the trial court." Fed. R. Crim. P. 14 advisory committee notes, 1966 amendment; *see also United States v. Hutchinson*, 573 F.3d 1011, 1026 (10th Cir. 2009) (noting that "tailoring of the relief to be granted, if any, is left to the district court's sound discretion") (citation omitted).

---

[2] The United States also seeks a hearing to provide the Court and the parties with a copy of Busch's police statement with proposed redactions and substitutions. After the United States filed its response, the Court ordered the United States to file that redacted police statement along with the original unredacted police statement, which the United States has done. *See* (Docs. 103 and 108). Since the Court and the parties now have access to those police statements, the Court finds no reason to grant the United States' request for a hearing.

4

It is well-established that joint trials of multiple defendants who are indicted together "are preferred because 'they promote efficiency and serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.'" *United States v. Hall*, 473 F.3d 1295, 1301 (10th Cir. 2007) (quoting *Zafiro v. United States*, 506 U.S. 534, 537 (1993)); *see also United States v. Rogers*, 921 F.2d 975, 984 (10th Cir. 1990) (stating that "we strike a balance in favor of joint trials") (internal quotations omitted). "Inasmuch as severance is a matter of discretion and not of right, the defendant must bear a heavy burden of showing real prejudice to his case" to convince a court not to hold a joint trial. *Hall*, 473 F.3d at 1302 (citation omitted); *see also Hutchinson*, 573 F.3d at 1025 (holding that defendant "was obliged to show, among other things, that the denial of severance would result in 'actual prejudice' to his defense") (internal citation omitted).

The Tenth Circuit has articulated a three-step inquiry to guide lower courts in considering a defendant's motion to sever. *United States v. Pursley*, 474 F.3d 757, 765 (10th Cir. 2007). First, courts must consider "whether the defenses presented are 'so antagonistic that they are mutually exclusive.'" *Id.* (quoting *United States v. Peveto*, 881 F.2d 844, 857 (10th Cir. 1989)). Second, "a defendant must further show 'a serious risk that a joint trial would compromise a specific trial right … or prevent the jury from making a reliable judgment about guilt or innocence.'" *Id.* (quoting *Zafiro*, 506 U.S. at 539). Third, and finally, courts must "weigh[] the prejudice to a particular defendant caused by joinder against the obviously important considerations of economy and expedition in judicial administration." *Id.* (citing *Peveto*, 881 F.2d at 857).

A. *First Step: Antagonistic Defenses*

"A mere conflict of theories or one defendant's attempt to cast blame on another does not require severance." *Peveto*, 881 F.2d at 857. "Defenses are mutually antagonistic if 'the conflict

5

between codefendants' defenses [is] such that the jury, in order to believe the core of one defense, must necessarily disbelieve the core of the other.'" *Pursley*, 474 F.3d at 765 (citation omitted). Put another way, defendants must show that "the acceptance of one party's defense would tend to preclude the acquittal of the other, or that the guilt of one defendant tends to establish the innocence of the other." *Id.* (quoting *Peveto*, 881 F.2d at 857).

Here, Barnes asserts that "Busch will almost certainly have to say that he told the co-defendants the purpose of going to the house was to steal the bike…." (Doc. 85) at 21-22. Barnes, on the other hand, contends that he had a different intent: to take back a motorcycle he believed belonged to Busch. Barnes further notes that "[s]everal co-defendants[, including Busch,] have altered their stories about whether or not the intent was to steal the motorcycle or retrieve what rightfully belonged to Mr. Busch." *Id.* at 21.

> To convict a defendant of carjacking, the United States must
> 
> prove beyond a reasonable doubt the following elements: (1) that [the defendant] took a motor vehicle from the person or presence of another; (2) that he did so by force, violence or intimidation; (3) that [the defendant] intended to cause death or serious bodily harm; and (4) that the motor vehicle had been transported, shipped, or received in interstate or foreign commerce.

*United States v. Gurule*, 461 F.3d 1238, 1243 (10th Cir. 2006). Barnes argues, in essence, that his defense to the carjacking charge is that he did not "take" the motorcycle from J.S. because Barnes believed that the motorcycle belonged to Busch, not J.S. Consequently, Barnes contends that the United States cannot prove beyond a reasonable doubt the first element of the carjacking charge as it applies to him.

However, "subjective motivation in acquiring possession or control of the victim's vehicle is irrelevant to whether the government established the 'taking' element of 18 U.S.C. § 2119." *Id.* As the Tenth Circuit explained, "to establish element one, the government need only

6

show that the defendant engaged in the prohibited conduct, i.e., acquiring possession or control of the victim's vehicle in the presence of another by force or intimidation." *Id.* The taking element does not require an intent to steal. *United States v. Payne*, 83 F.3d 346, 347 (10th Cir. 1996) (disagreeing with defendant that "the taking element requires an intent to steal….").

On the other hand, "the taker's purpose and motives in taking the vehicle have relevance on the issue of whether he had the requisite criminal intent for carjacking (element three) (intention to cause death or serious bodily harm)…."[3] *Id.* "[T]he intent element can be satisfied when the government proves that the defendant possessed a 'conditional intent' at the time he demands or takes control of the car—that is, the government need not prove that the defendant possessed 'a specific and unconditional intent to kill or harm in order to complete the proscribed offense.'" *United States v. Folse*, 2021 WL 1749472, at *10 (10th Cir.). In other words, conditional intent requires that the defendant intended "to seriously harm or kill the driver if that action had been necessary to complete the taking of the car." *Holloway v. United States*, 526 U.S. 1, 11–12 (1999).

Barnes' asserted belief that Busch owned the motorcycle is plainly not relevant to the third carjacking element. Whether Barnes intended to cause death or serious bodily harm, if necessary, to take the motorcycle has nothing to do with whether the taking was lawful or not. *Id.* Given that Barnes' purported defense is not a defense to the carjacking charge, Barnes has failed to demonstrate that the defenses are mutually antagonistic.

---

[3] The Court notes that the Tenth Circuit agrees with the First Circuit's "holding that a defendant can be found guilty of aiding and abetting under § 2119[, the carjacking statute,] if he 'consciously shared some knowledge of the principal's criminal intent.'" *United States v. Vallejos*, 421 F.3d 1119, 1123 (10th Cir. 2005) (citation omitted).

7

*B. Second Step: Serious Risk that a Joint Trial would Compromise Specific Trial Rights or Prevent a Jury from Making a Reliable Judgment about Guilt or Innocence*

Barnes argues that a joint trial would compromise his constitutional rights to confront and cross-examine witnesses at trial if co-Defendants' incriminating police statements are introduced at a joint trial and co-Defendants do not testify. Barnes further seems to argue that the complex nature of this case would prevent a jury from making a reliable judgment about his guilt or innocence.

*1. Serious Risk of Compromise of Specific Trial Rights*

In its response, the United States dispels Barnes' concerns about a joint trial compromising his constitutional trial rights. First, the United States notes that Hedgecock is a cooperating witness who will testify at trial. Barnes, therefore, will have an opportunity at trial to confront Hedgecock and cross-examine her about any incriminating police statements.

Second, Terrell "has only spoken to the government pursuant to a *Kastigar*-protected debrief."[4] (Doc. 102) at 8. Consequently, "[p]ursuant to the government's agreement with Terrell, no statement made by Terrell during the course of the debrief could be used against Terrell during the government's case-in-chief against Terrell." *Id.* "[I]f Terrell testified at trial and made statements inconsistent with what he said at the *Kastigar* debrief, then the government could introduce evidence regarding such statements to rebut any evidence or factual assertions made by or on behalf of Terrell." *Id.* In that situation, like with Hedgecock, Barnes would have an opportunity at trial to confront and cross-examine Terrell.

---

[4]"An immunity agreement granting a defendant use immunity is commonly referred to as a *Kastigar* agreement." *United States v. Darwich*, 574 F. App'x 582, 592 (6th Cir. 2014) (citing *Kastigar v. United States,* 406 U.S. 441, 453 (1972)). "[U]se immunity precludes only the use of the suspect's statements in a prosecution against him." *Id.*

Third, with respect to Busch, the United States admits that he "is in a different position than either Jehra Hedgecock or Tyson Terrell" because Busch "gave one post-arrest statement to law enforcement investigators and is not currently cooperating with the government." *Id.* Consequently, confrontation issues associated with Busch's statements must be analyzed under *Bruton*.

> The United States Supreme Court in *Bruton* held that the Sixth Amendment right to confront adverse witnesses is violated if the defendant's non-testifying codefendant makes an extrajudicial confession that implicates the defendant and the Government introduces the confession into evidence at their joint trial, even if the jury is instructed to consider the confession only against the codefendant.

*United States v. Verduzco-Martinez*, 186 F.3d 1208, 1212 (10th Cir. 1999). "Where, however, a confession is not facially incriminating and becomes so only when linked with evidence later introduced at trial, there is not the overwhelming probability that jurors will be unable to obey an instruction that they disregard an incriminating inference." *United States v. Coleman*, 2020 WL 3051577, at *3 (D.N.M.) (citing *Richardson v. Marsh*, 481 U.S. 200, 208 (1987)).

In a *Bruton* situation, a court can "protect the defendant's Sixth Amendment rights" in three ways, including "severing the trial, or … redacting the portions of the co-defendant's confession that incriminate the non-confessing defendant coupled with the use of limiting instructions." *Id.* In this case, Barnes seeks severance to cure *Bruton* issues while the United States believes redacting Busch's police statement will cure those issues.

As to the severance remedy, "[i]t is up to the court to decide whether the risk of prejudice arising from *Bruton* issues is high enough to warrant severance." *Id.* For example, severance "may be required where the admission of the redacted statement distorts the meaning of the statement or excludes information substantially exculpatory of the declarant." *United States v. Lujan*, 529 F. Supp. 2d 1315, 1322 (D.N.M. 2007). With respect to redaction, "[a] non-testifying

9

co-defendant's confession is properly redacted if it eliminates any reference to the defendant's name and to his existence…." *Id.* The Tenth Circuit has held

> that where a defendant's name is replaced with a neutral pronoun or phrase there is no *Bruton* violation, providing that the incrimination of the defendant is only by reference to evidence other than the redacted statement and a limiting instruction is given to the jury. Where, however, it is obvious from consideration of the confession as a whole that the redacted term was a reference to the defendant, then admission of the confession violates *Bruton,* regardless of whether the redaction was accomplished by use of a neutral pronoun or otherwise.

*Verduzco-Martinez*, 186 F.3d at 1214.

Having reviewed Busch's original unaltered police statement and the United States' redacted version of Busch's police statement, the Court finds that the redacted police statement eliminates any reference to Barnes' name and, as a whole, does not refer to Barnes' existence.[5] *See* (Doc. 108). Moreover, the redacted police statement neither distorts the meaning of the police statement nor does it exclude substantially exculpatory information. For these reasons, the Court determines that the United States properly redacted Busch's police statement and that Busch's redacted police statement cures any *Bruton* issues. The Court, therefore, concludes that *Bruton* does not mandate severance under the circumstances here.

> 2. *Serious Risk that a Joint Trial would Prevent a Jury from Making a Reliable Judgment about Guilt or Innocence*

Barnes also seems to argue that the complexity of a joint trial in this case poses a serious risk that a jury could not make a reliable judgment about his guilt or innocence. This case,

---

[5] Of course, for the redacted police statement to make sense, it must refer to a third person involved in taking J.S.'s motorcycle. The Court notes that portions of the redacted police statement refer to a male instead of referring to Barnes by name. *Compare* (Doc. 108-1) at 34 ("Because, honestly, if Stetson didn't go, he probably would have never even called us.") with (Doc. 108-2) at 34 ("Because, honestly, if that person didn't go, he probably would have never even called us."). Other portions refer only to a "person." *Compare* (Doc. 108-1) at 7 ("Tyson was in the back and Stetson was in the front?") with (Doc. 108-2) at 7 ("Tyson was in the back and another person was in the front?"). Otherwise, the redactions do not refer to a person at all. *Compare* (Doc. 108-1) at 16 ("Stetson's house") with (Doc. 108) at 16 ("the house").

however, is "not so complex, the number of defendants so great, or the disparity in culpability of the defendants so extreme that severance [is] required." *See United States v. Hardwell*, 80 F.3d 1471, 1487 (10th Cir. 1996) (internal citation omitted). As such, the Court concludes that the conduct of each Defendant in this case and the Counts enumerated in the Superseding Indictment would not "prevent the jury from making a reliable judgment about guilt or innocence." *See Pursley*, 474 F.3d at 765.

*C. Third Step: Weighing Prejudice to Barnes against Economy and Expedition in Judicial Administration*

Barnes argues that he will be prejudiced by a joint trial because he will be deprived of his constitutional rights to confront and cross-examine witnesses at trial. As described above, Plaintiff will not suffer any such prejudice with respect to Hedgecock and Terrell. Furthermore, Busch's redacted police statement cures any *Bruton* concerns as to Busch.

In addition, for the reasons stated above, the case is not so complex that a joint trial will prejudice Barnes. Indeed, "there is no prejudice if the evidence is such that the jury could compartmentalize it against each defendant," which is the case here. *See United States v. Hines*, 696 F.2d 722, 732 (10th Cir. 1982).

Also, to the extent that any prejudice could infect Barnes' right to a fair trial, "limiting instructions are ordinarily sufficient to cure potential prejudice." *Hardwell*, 80 F.3d at 1487 (citation omitted); *see also Zafiro*, 506 U.S. at 538-39 (noting that "[m]utually antagonistic defenses are not prejudicial *per se*" and "Rule 14 does not require severance even if prejudice is shown; rather, it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion"). The Court will, as it normally does, instruct the jury to consider guilt and innocence separately for each Defendant. The Court further observes that

> when defendants properly have been joined under Rule 8(b), a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence. Such a risk might occur when evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a codefendant. For example, evidence of a codefendant's wrongdoing in some circumstances erroneously could lead a jury to conclude that a defendant was guilty. When many defendants are tried together in a complex case and they have markedly different degrees of culpability, this risk of prejudice is heightened.

*Zafiro*, 506 U.S. at 539. Here, Barnes simply has not carried his heavy burden of demonstrating "real" or "actual" prejudice should the Court hold a joint trial.

With regard to the "important considerations of economy and expedition in judicial administration," separate trials for Barnes and his co-Defendants require the United States to present its case twice. *See Pursley*, 474 F.3d at 765 (citing *Peveto*, 881 F.2d at 857). As the Court finds no prejudice to Barnes if all Defendants are tried together, the Court need not balance prejudice against "considerations of economy and expedition" in conducting two separate trials. *See also id.* at 767 (explaining that when court "found no prejudice at all," there was "nothing to balance in this step"). Therefore, "considerations of economy and expedition in judicial administration" necessarily prevail in this situation. *See also id.* at 765 (citing *Peveto*, 881 F.2d at 857).

### D. Conclusion

The Court concludes first that Barnes does not have a defense let alone one that would be "so antagonistic" to the defenses of his co-Defendants as to be "mutually exclusive." *Peveto*, 881 F.2d at 857. Second, the Court concludes that Barnes has not demonstrated "a serious risk that a joint trial would compromise a specific trial right … or prevent the jury from making a reliable judgment about guilt or innocence." *See Zafiro*, 506 U.S. at 539. Third, the Court concludes that Barnes will not suffer any "real" or "actual" prejudice in a joint trial. In light of

these conclusions and the judicial preference to conduct trials jointly, Barnes is not entitled to a severed trial under Rule 14(a).  Hence, the Court denies the Motion to Sever without prejudice.

IT IS ORDERED that

1.  the United States' request for a hearing on the Motion to Sever Defendant Stetson Shane Barnes' Trial from Other Co-Defendants' Trials and Memorandum in Support Thereof (Doc. 85) is denied; and

2.  the Motion to Sever Defendant Stetson Shane Barnes' Trial from Other Co-Defendants' Trials and Memorandum in Support Thereof (Doc. 85) is denied without prejudice.

_____
UNITED STATES DISTRICT JUDGE