IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                        No. CR 20-1486-1 KG

STETSON SHANE BARNES,

    Defendant.

**ORDER AND STATEMENT OF REASONS**

On November 12, 2021, a jury convicted Defendant Stetson Shane Barnes on Count 1, conspiracy to commit carjacking, Count 2, carjacking resulting in death, and Count 6, felon in possession of a firearm or ammunition. (Doc. 285) (Barnes Verdict). The jury hung and the case mistried with respect to Count 5, using or carrying a firearm during and in relation to the carjacking, discharging the firearm during the commission of the carjacking, and causing the death of the victim through the use of the firearm during and as a consequence of the carjacking. *Id.* Mr. Barnes and the United States filed objections to the Presentence Investigation Report (PSR). (Docs. 312 (Barnes' Objections) and 313 (United States' Objections)).[1]

As explained below, the Court sustains-in-part and overrules-in-part the Objections. In addition, the Court has considered all of the sentencing factors set forth in 18 U.S.C § 3553(a)(1)-(7), including those set forth below.

I.    *Objections*

Mr. Barnes raises several objections to the PSR. The Court addresses each in turn.

---

[1] The United States' Objections deal with application of the discretionary downward departure in Guideline § 2A1.1 Application Note 2.B. *See* (Doc. 313). For the reasons discussed below, the Court overrules-in-part and sustains-in-part these objections, but otherwise does not expressly discuss the United States' Objections.

*(A) Objection No. 1: Evidence and Instructions at Trial*

Mr. Barnes appears to identify three (3) purported defects with the trial and the jury instructions: i) denial of a self-defense instruction for the carjacking charge; ii) admission of statements from non-testifying co-defendants, even with the limiting instruction, and the related denial of Barnes' motion to sever; and iii) conflicting statements from testifying co-defendant Jehra Hedgecock. (Doc. 312) at 9-10. While Mr. Barnes may be seeking to preserve these alleged errors for appellate review, they do not factor into the Court's analysis for sentencing. Accordingly, the Court overrules Objection No. 1.

*(B) Objection No. 2: Criminal History Calculation*

Mr. Barnes next challenges the criminal history computation in the PSR. Mr. Barnes argues that the PSR calculates "prior offenses separately even though global pleas [were entered] in State Court." (Doc. 312) at 10. Mr. Barnes summarily asserts that the "total Criminal History Computation should not be 15 but should be 8 for because [sic] of the global pleas." (Doc. 312) at 11. Mr. Barnes provides no detail regarding this matter and fails to specify which offenses he contends were improperly accounted for in the Criminal History. However, the United States Probation Office recalculated his criminal history points and determined that Barnes has 11 criminal history points, rather than 15, which puts him in Criminal History Category V. The Court accepts the Probation Officer's recalculation and, in this way, sustains-in-part Mr. Barnes' objection.

*(C) Objection No. 3: Presentence Confinement Credit*

Mr. Barnes objects to the original calculation of his presentence confinement. (Doc. 312) at 10. Based on this Objection, the United States Probation Office corrected the face sheet of the PSR and adjusted the presentence confinement calculation. *See* (Doc. 314) at 3. The Court

accepts the Probation Officer's amended calculation and, in this way, sustains Mr. Barnes' objection.

*(D) Objection No. 4: Factual Information in the PSR*

Mr. Barnes takes umbrage with the PSR's purported failure "to emphasize appropriately the life and death situation Stetson Barnes was placed in even though leaving when fired upon four times." (Doc. 312) at 10. Mr. Barnes urges the Court to consider that he did not fire his weapon until after the victim, Mr. Justin Swenson, fired at Mr. Barnes and his co-defendants. Mr. Barnes does not challenge any of the factual recitations in the PSR, but rather disagrees on the weight and importance to be assigned to those facts. To the extent this factual disagreement goes to any departure or enhancement discussed below, the Court incorporates that analysis herein. To the extent this factual disagreement constitutes a different "objection" to the PSR, the Court applies a preponderance-of-the-evidence standard when evaluating facts, *United States v. Magallanez*, 408 F.3d 672, 684–85 (10th Cir. 2005), and overrules the objection.

*(E) Objection Nos. 5 and 6: Calculation of Offense Level*

In calculating the offense level, the Court begins by calculating the base offense level applicable, applying any upward or downward adjustments, followed by any upward or downward departures, and finally, any request for variance.

Mr. Barnes does not object to the Court applying Guideline § 2B3.1, because carjacking is a form of robbery. *See United States v. Patton*, 927 F.3d 1087, 1100 (10th Cir. 2019). Mr. Barnes also agrees that Guideline § 2B3.1(c)(1) applies. Guideline § 2B3.1(c)(1) is the cross reference directing the Court to apply Guideline § 2A1.1 (First Degree Murder) when "a victim was killed under circumstances that would constitute murder under 18 U.S.C. § 1111 had such

killing taken place within the territorial or maritime jurisdiction of the United States." Guideline § 2A1.1 provides a base offense level of 43.

The Court agrees that the cross-reference in Guideline § 2B3.1(c)(1) applies to this case, such that Guideline § 2A1.1 provides the base offense level of 43. *See generally United States v. Lowell*, 2 F.4th 1291, 1298–1300 (10th Cir. 2021). The Court finds that the base offense level is 43, pursuant to Guidelines §§ 2B3.1(c)(1) and 2A1.1.

The United States Probation Office recommends a two-level upward adjustment for obstruction of justice, pursuant to Guideline § 3C1.1. This Guideline provides:

> If (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense, increase the offense level by 2 levels.

USSG § 3C1.1. The Probation Office makes this recommendation based on two things: first, the gun Mr. Barnes drew on and used to shoot the victim, Mr. Swenson, was never recovered by law enforcement; and second, co-defendant Tyson Terrell admitted to law enforcement officers that he and Mr. Barnes intentionally burned the truck they used to commit the carjacking and from which Mr. Barnes fired at the victim because "something needed to be done with it." (Doc. 297) at 8.

> The Application Notes are particularly instructive for the Court's consideration. First:
>
> This adjustment applies if the defendant's obstructive conduct (A) occurred with respect to the investigation, prosecution, or sentencing of the defendant's instant offense of conviction, and (B) related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) an otherwise closely related case, such as that of a co-defendant.
>
> Obstructive conduct that occurred prior to the start of the investigation of the instant offense of conviction may be covered by this guideline if the conduct was purposefully calculated, and likely, to thwart the investigation or prosecution of the offense of conviction.

USSG § 3C1.1 (Application Note 1). However,

> [t]his provision is not intended to punish a defendant for the exercise of a constitutional right. A defendant's denial of guilt (other than a denial of guilt under oath that constitutes perjury), refusal to admit guilt or provide information to a probation officer, or refusal to enter a plea of guilty is not a basis for application of this provision. In applying this provision in respect to alleged false testimony or statements by the defendant, the court should be cognizant that inaccurate testimony or statements sometimes may result from confusion, mistake, or faulty memory and, thus, not all inaccurate testimony or statements necessarily reflect a willful attempt to obstruct justice.

USSG § 3C1.1 (Application Note 2). The Sentencing Commission provided several non-exhaustive examples of the types of conduct to which this adjustment applies, including:

> (D) destroying or concealing or directing or procuring another person to destroy or conceal evidence that is material to an official investigation or judicial proceeding (*e.g.*, shredding a document or destroying ledgers upon learning that an official investigation has commenced or is about to commence), or attempting to do so; however, if such conduct occurred contemporaneously with arrest (*e.g.*, attempting to swallow or throw away a controlled substance), it shall not, standing alone, be sufficient to warrant an adjustment for obstruction unless it resulted in a material hindrance to the official investigation or prosecution of the instant offense or the sentencing of the offender[.]

USSG § 3C1.1 (Application Note 4). "'Material' evidence, fact, statement or information, as used in this section, means evidence, fact, statement or information that, if believed, would tend to influence or affect the issue under determination." USSG § 3C1.1 (Application Note 6).

Part of the evidence at trial revolved around whether the victim or Mr. Barnes fired the first shot and the trajectory of the rounds the victim fired. The truck likely would have contained shell casings from Mr. Barnes' rounds and may have contained glass shards that would shed light on whether the rear driver-side window shattered from an incoming or outgoing round. Additionally, while Mr. Barnes admitted to possessing and firing a .45 caliber handgun, law enforcement could not conclusively tie the bullets found in the victim's house to the shell casings and the gun because the shell casings and the gun were not recovered. Investigators were also

deprived of any information that could have been gleaned from rounds entering or becoming lodged in the vehicle.

The Court finds that Mr. Barnes' obstructive conduct, that is, disposing of the gun and the truck, occurred with respect to the investigation of and related to the carjacking resulting in death. The Court further finds, by a preponderance of the evidence, that this obstructive conduct was purposefully calculated and likely to thwart the investigation of the offense of conviction. Therefore, the Court overrules Mr. Barnes' objection and applies the two-level upward adjustment as directed by Guideline § 3C1.1; mathematically, this would result in an adjusted offense level of 45, although the Guidelines max out at offense level 43, the sentencing "range" under either would be LIFE.

After calculating the adjusted offense level, the Court considers whether the Guidelines counsel any departures. While Guideline § 2B3.1(c)(1) directs the Court to Guideline § 2A1.1 (First Degree Murder), Application Note 2.B (Felony Murder) states:

> If the defendant did not cause the death intentionally or knowingly, a downward departure may be warranted. For example, a downward departure may be warranted if in robbing a bank, the defendant merely passed a note to the teller, as a result of which the teller had a heart attack and died. The extent of the departure should be based upon the defendant's state of mind (e.g., recklessness or negligence), the degree of risk inherent in the conduct, and the nature of the underlying offense conduct. However, departure below the minimum guideline sentence provided for second degree murder in § 2A1.2 (Second Degree Murder) is not likely to be appropriate. Also, because death obviously is an aggravating factor, it necessarily would be inappropriate to impose a sentence at a level below that which the guideline for the underlying offense requires in the absence of death.

USSG § 2A1.1 (Application Note 2.B). Guideline § 2A1.2 (Second Degree Murder) provides a base offense level of 38.

Mr. Barnes urges the Court to depart downward to offense level 38, as authorized by Guideline § 2A1.1 Application Note 2.B, because his "actions were not premediated [sic], were

6

in reaction to being shot at by [the victim] and occurred when he and the other two defendants were attempting to leave and Mr. Busch already had left. The fact a jury could not reach a verdict when properly instructed on self-defense should be considered by the Court." (Doc. 312) at 11.

The Court determines that Application Note 2.B applies, therefore, the Court may exercise its discretion to depart downward, including to offense level 38 (commensurate with a second degree murder). In determining the extent of the departure, the Court may consider conduct underlying an acquitted charge so long as the government proves the conduct by the preponderance of the evidence. *Magallanez*, 408 F.3d at 684–85. The Court agrees that Mr. Barnes did not commence the carjacking with the purpose of killing the victim. However, the Court finds that his actions were committed, at best, with extreme recklessness. Mr. Barnes was a convicted felon unlawfully in possession of a firearm who agreed and conspired with his co-defendants to commit a carjacking in the middle of the night. Mr. Barnes and his co-defendants announced their presence to Mr. Swenson and knew that the Mr. Swenson was likely armed. Barnes nonetheless brought the loaded gun with him, pointed the gun directly at Mr. Swenson, and then later fired twelve rounds into Mr. Swensen's occupied residence. Mr. Barnes' conduct involved a high degree of inherent risk, and the nature of the underlying offense similarly invited violence.

Based on this conduct, which the Court finds by a preponderance of the evidence, the Court will not depart downward to level 38. Instead, the Court will depart downward to base offense level 41.

In exercising its discretion, the Court notes the differences between this case and *United States v. Lowell*, 18-cr-1108 KG, in which the Court applied the cross-reference and the

Application Note to depart downward to level 38. In *Lowell*, the defendant fled a U.S. Border Patrol immigration checkpoint in a stolen vehicle. 2 F.4th at 1293. During the ensuing chase, the defendant blew a tire and stopped in oncoming traffic. He approached another vehicle with a loaded gun, "pointed the gun at the driver and demanded he turn over the vehicle." *Id.* Border Patrol agents terminated the chase "rather than risk endangering the public with a high-speed chase on busy urban roads." *Id.* at 1294. Approximately two and a half hours elapsed between Border Patrol agents terminating the chase and the commencement of a second chase. During the second chase, the defendant "drove with and against traffic ... [and] wove in and out of traffic on city streets and highways, sped through red lights, hit a police vehicle, and drove through a fence onto an access road." *Id.* The chases ended when the defendant "struck a motorcycle and killed the driver." *Id.*

The facts of *Lowell* present undeniably culpable conduct. However, *Lowell* is distinguishable and, in many ways, less severe than this case. Here, video evidence and testimony show that Mr. Barnes brandished his firearm at the victim, and Mr. Barnes testified to firing twelve rounds into the victim's occupied house. That the victim may have fired first, as the co-defendants started to drive away, is of no moment: Mr. Barnes and his co-defendants initiated the encounter and invited the violence. Mr. Barnes' conduct evinces a higher degree of recklessness and reckless disregard for life than the high-speed chase in *Lowell*. Accordingly, the Court finds that a five-level departure is inappropriate.

In this way, the Court sustains-in-part and overrules-in-part Mr. Barnes' objection and calculates the total offense level as 41, after applying the applicable upward adjustment and downward departure.

To the extent Mr. Barnes moved for a variance, which is not entirely clear, the Court denies that motion. The facts of this case do not support or merit a downward variance, for the reasons discussed above.

II.  *Analysis*

The Court determined that Mr. Barnes is in Criminal History Category V and has a total offense level of 41. Therefore, the Guidelines provide a sentencing range of 360 months to life imprisonment. The Probation Office recommends sentencing Barnes to 360 months. Mr. Barnes requests a "sentence to a much lesser term." (Doc. 312) at 19. The United States requests a sentence reflecting "no significant departure from the first-degree murder base offense level of 43," which carries a "range" of life imprisonment. (Doc. 313) at 6.

To avoid unwarranted sentencing disparities, the Court has considered sentences imposed in other cases and under roughly similar circumstances. For example, in *Lowell*, the Court imposed a top-of-the-Guidelines-range sentence of 365 months for the carjacking resulting in the death of the motorcyclist, as described above.[2] As the Court noted, *supra*, the conduct at issue in *Lowell* was less culpable than Barnes' conduct in this case.

In 2021, the Fourth Circuit Court of Appeals, sitting in *habeas corpus* review following a change in law announced by *Montgomery v. Louisiana*, 577 U.S. 190 (2016), upheld a fifty-two-year sentence (624 months) for a fifteen-year-old juvenile offender convicted for a "series of carjackings, beatings, and murders in Virginia." *United States v. Friend*, 2 F.4th 369, 372 (4th Cir. 2021). The defendant in that case, with co-conspirators, murdered two victims and severely beat a third over the course of two months. *Id.* at 373–74. The trial court originally sentenced the defendant to 180 months' imprisonment for the carjacking that resulted in a beating, and life

---

[2] The defendant in *Lowell* had a Criminal History Category of III and base offense level of 38.

imprisonment without parole for the carjacking resulting in death. *Id.* at 374. That sentence was later reduced to 52-years. *Id.* at 376. The conduct in *Friend* was more egregious and heinous than the conduct in this case, because the defendant in *Friend* carjacked multiple individuals on separate occasions, severely beat one victim, and participated in the murder of two others. That conduct evinced a degree of intent and willfulness with respect to the taking of a life that is not present in this case.

In *Bruzón-Velázquez*, the defendant discussed the possibility of committing a robbery with four other individuals, and ultimately selected a victim with his co-conspirators. *United States v. Bruzón-Velázquez*, 49 F.4th 23, 27 (1st Cir. 2022). The defendant forced the victim into a vehicle at gunpoint, drove to a remote area, forced the victim out of the vehicle, then fatally and repeatedly shot the victim in the head with a .40 caliber Glock pistol. *Id.* After the killing, the defendant boasted about his deeds. *Id.* The defendant pleaded guilty, pursuant to a plea agreement, and then appealed. In September 2022, the First Circuit upheld a sentence of life imprisonment for discharging a firearm during and in relation to a crime of violence resulting in death and a sentence of fifteen years' (180 months) imprisonment for attempted carjacking. The offenses of conviction in that case differ from this case, notably because *attempted* carjacking carries a maximum sentence of fifteen years. *See id.* at 29. Nonetheless, the total sentence and the factual scenario inform this Court's decision in this case. Again, the conduct in *Bruzón-Velázquez* was more severe and showed the premeditated, intentional taking of a human life.

*United States v. Felder*, 999 F.3d 57 (2d Cir. 2021), similarly reflects a more serious factual scenario. In that case, the defendant, over the course of eight (8) days, "killed two livery cab drivers by shooting each in the head while stealing their cabs for use in armed robberies." *Id.* at 61. The defendant was convicted on two counts of carjacking resulting in death, and seven

10

other charges, and sentenced to a total of life imprisonment plus 34 years. *Id.* The court sentenced the defendant to concurrent terms of life imprisonment on each of the carjackings. *Id.* at 63 n.2. The Second Circuit upheld that sentence. *Id.* at 61. Unlike *Felder*, Mr. Barnes did not commit premeditated murder when effecting the carjacking at issue.

The Court also considered sentences imposed in carjacking cases that did not result in a death. For example, Judge Browning sentenced a defendant to 156 months' imprisonment, each, on two counts of carjacking, aiding and abetting, without a finding of bodily injury or death. *See United States v. Folse*, 15-cr-2485-001 JB (Doc. 276) (Judgment entered Apr. 3, 2019). Similarly, Judge Riggs sentenced a defendant to 72 months' imprisonment for a simple carjacking without a finding of bodily injury or death. *See United States v. Stallworth*, 20-cr-1885-001 KWR (Doc. 45) (Judgment entered Feb. 23, 2022). This Court sentenced a defendant to 156 months' imprisonment on a simple carjacking, without a finding of bodily injury or death. *See United States v. Hernandez*, 19-cr-4184-001 KG (Doc. 179) (Judgment entered July 27, 2022).

III. *Additional 18 U.S.C. 3553 Factors for Consideration*

In addition to the section 3553 factors considered above, this Court has considered Mr. Barnes's history and characteristics. Specifically, Mr. Barnes has been diagnosed with ADHD, for which he is prescribed medications, as well as anxiety and PTSD. He also has a history of abusing controlled substances, including methamphetamine, marijuana, heroin, and suboxone, all of which negatively impacted him and his family and contributed to his commission of criminal offenses. Mr. Barnes did not complete his high school education, dropping out in the 9th grade, and he has no other educational or vocational certifications. His employment has included various jobs, laboring in construction and welding-type occupations.

Mr. Barnes' history also includes multiple convictions for no less than five felony offenses (as documented in his PSR). The instant offense involved in part the theft of a motorcycle, which was not a first for Mr. Barnes. PSR paragraphs 43 and 44 both describe prior convictions for offenses in which Mr. Barnes stole, in one instance, a 4-wheeler, and another in which he stole a dirt bike.

After a jury trial, the nature of this offense and the surrounding circumstances are clear and well understood, in that Mr. Barnes conspired with Jehra Hedgcock, Tyson Terrell, Donald Busch to commit a carjacking involving the theft of a motorcycle from a property belonging to Mr. Swenson; that during the carjacking, a crime of violence, the defendant, a convicted felon, illegally possessed a firearm and discharged 12 rounds of ammunition into a home, narrowly missing a female inside but fatally striking Mr. Swenson in the back of his head.

IV.   *Sentencing*

For all the foregoing reasons, the Court adopts the factual representations of the PSR, and having considered written and oral arguments of counsel, having considered the Guidelines and with discretion to depart to offense level 41, all the § 3553(a) factors, and foregoing court decisions, the Court imposes the following sentences:

As to Count 1, Conspiracy to Commit a Carjacking, the Court sentences Mr. Barnes to a term of 60 months' imprisonment, which is the statutory maximum.

As to Count 6, for Felon in Possession a Firearm and Ammunition, the Court sentences Mr. Barnes to a term 120 months' imprisonment, which is also the statutory maximum.

And finally, as to Count 2, having exercised its discretion to depart downward from offense level 45 four levels to offense level 41, the Court hereby sentences Mr. Barnes to a term

of 480 months' or 40 years' imprisonment. This sentence falls within the Guideline range of 360 months to Life.

The sentences as to all three counts will run concurrently, for a total term of imprisonments of 480 months.

The Court is persuaded that the sentence, as imposed, is enough. That is, it is sufficient and not more than necessary to achieve the goals of sentencing as set forth in 18 U.S.C. § 3553(a)(1)-(7), including to provide just punishment and to protect the public. Additional elements of sentencing, including the term of supervised release and conditions thereof, are as discussed on the record and reflected in the Judgment.

IT IS SO ORDERED.

_____
UNITED STATES DISTRICT JUDGE